IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANNIA

| | |
|---|---|
| R & C OILFIELD SERVICES, LLC,<br><br>    *Plaintiff,*<br><br>v.<br><br>AMERICAN WIND TRANSPORT GROUP, LLC.,<br><br>    *Defendant.* | Civil Action No. 2-19-cv-1201<br><br>Hon. William S. Stickman IV |

## MEMORANDUM OPINION

WILLIAM S. STICKMAN IV, District Judge

Pending before the Court is Defendant American Wind Transport Group, LLC's ("American Wind") motion to dismiss seeking to compel arbitration or, in the alternative, a motion to dismiss for failure to state a claim upon which relief can be granted. (ECF No. 13). Upon careful consideration of parties' respective arguments in favor and in opposition to Defendant's motion, the Court **DENIES** Defendant's motion to dismiss, but **GRANTS** Defendant's motion to compel arbitration and **STAYS** the proceedings.

### FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff R&C Oilfield Services, LLC ("R&C") is an Oklahoma limited liability company whose business consisted of owning and operating three semi-trucks to haul wind energy equipment components. Complaint ("Compl.") (ECF No. 1), ¶ 2. Robert Fleming ("Fleming") and his stepson, Wuttichai Timula ("Timula"), residents of Colorado, owned and operated R&C. *Id.* On or about June 27, 2016, R&C entered into an "Independent Contractor Service Agreement" ("Agreement") with American Wind, a Pennsylvania limited liability company that operates as

1

both as a carrier and broker of wind energy products. *Id.* at ¶¶ 3-4, 7, 9. Pursuant to the Agreement, R&C provided and operated semi-trucks for the purpose of hauling wind energy components to and from American Wind's customers. *Id.* at ¶ 10. According to R&C, it was not practical for it to enter into multiple agreements with other brokers because the Agreement with American Wind demanded that R&C provide long haul trucking on demand, and R&C only had a small fleet of trucks. *Id.* at ¶ 11.

R&C alleges that American Wind failed and refused to make the agreed upon detention payments pursuant to the Agreement. *Id.* at ¶ 12. In the field of trucking, a "detention" occurs when a driver's route is delayed at either the pick-up location or the destination delivery location for more than the agreed-upon time. *Id.* R&C contends that Paragraph 1.03 of Appendix B to the Agreement required American Wind to pay it 100 percent of the detention upon payment by the end customer. *Id.* at ¶¶ 13-14, Appendix B at 1.03. R&C further contends that it was the "custom and practice" of the parties from 2016 through 2018 to allow up to four hours of delay for each of R&C's vehicles at both the point of origin and the point of delivery. *Id.* at ¶ 15. Beyond those four hours, it was allegedly the "custom and practice" that all detention would be paid to R&C at a rate of $150.00 per hour. *Id.* It was possible to alter the time and amount under the Agreement, but the default standard was apparently most commonly used and expected. *Id.*

From approximately June 27, 2016 through approximately November 25, 2016, R&C transported eighteen (18) loads for which the detention payments were either not paid, not paid in full, or paid at the incorrect percentage rate. *Id.* at ¶ 16. R&C alleges it is owed approximately $9,235.37 for the unpaid and partially unpaid detention of these loads as well as approximately $5,749.77 for detention of these loads that American Wind incorrectly calculated at a 75% rate

2

rather than the 100% rate required by the Agreement. *Id.* at ¶¶ 17-18. The bills of lading for these eighteen loads were submitted to American Wind in 2016. *Id.* at ¶ 20.

From approximately July 10, 2017 through approximately December 19, 2017, R&C transported fifteen (15) loads for which it was either not paid, not paid in full, or paid an incorrect percentage rate. *Id.* at ¶ 22. R&C alleges it is owed approximately $41,825.50 for the unpaid or partially paid detention as well as approximately $5,794.31 for detention of these loads that American Wind calculated incorrectly at a 75% rate rather than the 100% rate required by the Agreement. *Id.* at ¶ 23. The bills of lading for these fifteen loads were submitted to American Wind in 2017. *Id.* at ¶ 25.

On or about January 5, 2018, R&C transported one (1) load for which it was not paid for detention and is owed approximately $112.50. *Id.* at ¶ 29. The bill of lading for this load was submitted to American Wind in 2018. *Id.* at ¶ 31.

In summary, R&C claims that it is owed a total of $62,704.45 for the unpaid, partially paid, and inaccurately paid detention for the transport vehicles for thirty-four (34) loads from 2016 to 2018. *Id.* at ¶ 32.

R&C further alleges that the unpaid detention payments resulted in a "cash shortfall" causing it to sell its three trucks to Hollywood Express of Oklahoma, Inc. ("HEI") because it could not pay its bills. *Id.* at ¶ 42. The sale occurred on March 9, 2018. R&C posits that HEI made approximately $645,878.15 in gross profit from March 1, 2018 through December 2, 2018 using the trucks. *Id.* at ¶ 44. After accounting for costs, R&C argues that the net profits earned by Hollywood Express of Oklahoma, Inc. from March 2018 through March 2019 would be in excess of $400,000.00 and that is the amount R&C lost in profits. *Id.* at ¶ 46.

R&C advances one claim for breach of contract in its Complaint. *Id.* at ¶¶48-52. It argues that American Wind breached the Agreement when it did not pay the amounts due and owing under the Agreement, when it did not meet its contractual disclosure obligations, and when it did not abide by the covenant of good faith and fair dealing that is inherent in all contracts. *Id.* at ¶ 49.

In its motion to dismiss, American Wind argues that the current litigation is a contract dispute subject to an arbitration clause within the same agreement R&C seeks to enforce. *See* Defendant's Memorandum of Law in Support of Motion to Dismiss Complaint (ECF No. 14) ("Def.'s Mem. in Supp.") at p. 2. The arbitration clause of the Agreement, entitled "6.06 Dispute Resolution," provides in pertinent part as follows:

> Except as provided for in Subsection 6.06(c) below, any claim, dispute or controversy including, but not limited to the interpretation of any federal statutory or regulatory provisions purported to be encompassed by this Agreement; or the enforcement of any statutory rights emanating or relating to this Agreement **shall be resolved on an individual basis (and not as part of a class action) exclusively between Contractor and Carrier by final and binding arbitration to be held in Allegheny County, Pennsylvania** before the American Arbitration Association ("AAA"). The Arbitration proceeding shall be governed by the following rules:
>
> (a) A written demand for arbitration must be mailed to the other party and the AAA within one hundred and twenty (120) days of the occurrence of the claimed breach or other event giving rise to the controversy or claim. Failure to make such timely demand for arbitration shall constitute an absolute bar to the institution of any proceedings and a waiver of the claim.
>
> **Failure to make such timely demand for arbitration shall constitute an absolute bar to the institution of any proceedings and a waiver of the claim.**
>
> (b) The demand for arbitration shall identify the provision(s) of this Agreement alleged to have been breached and shall state the issue proposed to be submitted to the arbitration and the remedy sought.
>
> \* \* \*

(c) This arbitration provision shall not be applicable to any controversy, dispute or claim arising out of or related to (i) Section 6.05 (Confidentiality/Non-Compete) of this Agreement for which injunctive relief as well as money damages may be sought from a court of competent jurisdiction or (ii) the collection of deficit balances in Contractor's account for which an action may be brought against Contractor by Carrier in a court of law in Allegheny County, Pennsylvania after the expiration of the 120 day period set forth in Subsection 6.06(a) above.

(d) As to any dispute or controversy which under the terms of this Agreement is a proper subject of arbitration, no suit at law or in equity based on such a dispute or controversy shall be instituted by either party other than a suit to conform, enforce, vacate, modify or correct the award of arbitration(s) as provided by law; provided, however, that this clause shall not limit Carrier's right to obtain any provisional remedy including, without limitation, injunctive relief, writ for recovery of possession or similar relief from any competent jurisdiction, as may be necessary in Carrier's sole subjective judgment to protect its property rights.

*See* Exhibit A to Compl., Agreement at § 6.06(a) (repetition and emphasis in original).

R&C responds that the arbitration clause is unenforceable due to the United States Supreme Court's recent holding in *New Prime Inc. v. Oliveira*, __ U.S. __, 139 S. Ct. 532 (2019), which it asserts held that the Federal Arbitration Act ("FAA") exempts independent contractors from compelled arbitration related to their "contracts of employment" as interstate transportation workers. R&C submits that its Agreement with American Wind was a "contract of employment" for the purposes of *New Prime* and, therefore, the Court lacks the authority to compel arbitration. *See generally* Plaintiff's Response in Opposition to Motion to Dismiss Complaint ("Pl.'s Resp. in Opp'n") (ECF No. 17). American Wind replies that no court has interpreted *New Prime* as broadly as R&C does, and R&C has not come forward with any authority that expands *New Prime* to render arbitration agreements unenforceable between business entities which, unlike transportation workers, cannot assert federal employment law claims. *See generally* Defendant's Reply Memorandum in Support of Motion to Dismiss Complaint (ECF No. 18) ("Def.'s Reply Br.").

5

## STANDARD OF REVIEW

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). A plaintiff must allege sufficient facts that, if accepted as true, state a claim for relief that is plausible on its face. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court must accept all well-pleaded factual allegations as true and view them in the light most favorable to the plaintiff. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009); *see also DiCarlo v. St. Marcy Hosp.*, 530 F.3d 255, 262-63 (3d Cir. 2008). The "plausibility" standard required for a complaint to survive a motion to dismiss is not akin to a "probability" requirement, but asks for more than sheer "possibility." *Iqbal*, 556 U.S. at 678 (*citing Twombly*, 550 U.S. at 556). In other words, the complaint's factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations are true even if doubtful in fact. *Twombly*, 550 U.S. at 555. Facial plausibility is present when a plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendants are liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678. Even if the complaint's well-pleaded facts give rise to a plausible inference, that inference alone will not entitle a plaintiff to relief. *Id.* at 682. The complaint must support the inference with facts to plausibly justify that inferential leap. *Id.*

Generally, a court may not consider extraneous documents when considering a motion to dismiss. *In re Burlington Coat Factory Securities Litigation*, 114 F.3d 1410, 1426 (3d Cir. 1997). If matters outside the pleadings are presented to and not excluded by the court at a motion to dismiss, the motion must be treated as a motion for summary judgment. *See* Fed. R. Civ. P. 12(d). However, when reviewing the sufficiency of a complaint, a court may consider exhibits attached

to it, which are incorporated within the complaint, without converting the motion into one for summary judgment. *See In re Burlington*, 114 F.3d at 1426 (A court may consider a "document integral to or explicitly relied upon in the complaint." (citations omitted)); *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir. 1994) (same); *Fallon v. Mercy Catholic Medical Center of Southeastern Pennsylvania*, 877 F.3d 487, 493 (3d Cir. 2017) (same); Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."); *see also Pension Ben. Guar. Corp. v. White Consol. Industries, Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (holding that a court may consider an "undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.").

"[A] motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds that plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011). Although the Court must accept the allegations in the Complaint as true, it is "not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (citations omitted).

Although American Wind's motion is labeled "Motion to Dismiss," its primary argument is better characterized as a "Motion to Compel Arbitration." Pl.'s Resp. in Opp'n at p. 4. The United States Court of Appeals for the Third Circuit ("Third Circuit") has recently provided a detailed analysis of the standard of review for a motion to compel arbitration in the context of "employment contract" litigation following *New Prime*. In *Singh v. Uber Technologies, Inc.*, 939 F.3d 210, 216 (3rd Cir. 2019), the Third Circuit instructed that a motion to dismiss standard should

be applied in a motion to compel arbitration where a valid agreement to arbitrate between the parties is apparent from the face of the complaint or incorporated documents. If, however, the complaint and supporting documents are unclear as to whether the parties agreed to arbitrate or the plaintiff has provided additional facts sufficient to place the agreement in dispute, a court can engage in a "restricted inquiry into the factual issues as necessary" and the motion to compel arbitration is judged under a summary judgment standard. *Id.* Instantly, because the arbitration clause is clear and R&C has not provided additional facts to place the Agreement in dispute, the Court will apply the standard of review appliable to a motion to dismiss.

## ANALYSIS

At this point, the central question before the Court is not whether American Wind has breached its contractual obligations under the Agreement, but whether the Court should enforce the arbitration provision of the Agreement. As discussed below, the Court finds that the arbitration clause is enforceable and it grants American Wind's motion to compel arbitration. The Agreement between R&C and American Wind is not a "contract for employment" for the purposes of the FAA. The Court stays the case based on precedent from the Third Circuit.

### I. THE ARBITRATION PROVISION IS ENFORCEABLE.

The FAA, enacted in 1925, requires courts to enforce private arbitration agreements. *See New Prime,* 139 S. Ct. at 536. *See also* 9 U.S.C. § 2. The Supreme Court has recognized that the FAA evidences "a national policy favoring arbitration." *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984). There are, however, limitations. Section 1 of the FAA states that it does not apply to the "contracts of employment" of seamen, railroad employees, or "any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1 ("nothing herein contained shall apply to contracts of employment of seaman, railroad employees, or any other class of workers engaged

in foreign or interstate commerce."). R&C argues that the arbitration clause contained in its Agreement with American Wind is unenforceable under the United States Supreme Court's decision in *New Prime*. The Court disagrees.

### A. *New Prime* and the parties' arguments concerning its applicability.

In *New Prime* a driver for an interstate trucking company, Oliveira, filed a class action suit alleging that the company, New Prime, denied its drivers lawful wages. The company moved to dismiss the action based on an arbitration clause in the agreement with its drivers. The driver argued that the arbitration clause was unenforceable because Section 1 of the FAA (enforcing arbitration provisions) exempted "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." *New Prime*, 139 S. Ct. at 536. The company countered that its drivers were classified as independent contractors and, therefore, were not under "contracts of employment."

The Supreme Court examined whether a "contract of employment" could be extended to independent contractors or whether the term was limited to the traditional common law definition of "employees." *Id.* The Court examined the original public meaning of the term "contracts of employment" in 1925, the year the FAA was promulgated. *Id.* at 539. Noting that many legal dictionaries of the era lacked the term "contract of employment" as a term of art, the Court instead consulted contemporaneous popular dictionaries, finding that the term "employment" was not limited to traditional definitions, but broadly embraced "independent contractors." *Id.* at 540–41. "Contracts of employment" was used broadly to capture "any contract for the performance of *work* by *workers*." *Id.* at 541 (emphasis in original). The Court ultimately held that the exclusion in the FAA for workers with a "contract of employment" also preempted the enforcement of arbitration clauses in contracts involving independent contractors engaged in interstate commerce.

9

Citing to *New Prime*, R&C posits that the independent contractor agreement formed between it and American Wind constitutes a contract of employment concerning interstate commerce and is therefore not arbitrable under the FAA. Pl.'s Resp. in Opp'n at p. 6. American Wind disagrees and argues that R&C's understanding of *New Prime* is unjustifiably broad. Def.'s Br. in Supp. at p. 10. *New Prime*, American Wind contends, was a "wage and hour class action" and courts within the Third Circuit have only applied *New Prime* in cases that involved federal employment claims. *Id.* at p. 11. Because R&C is a "business entity" rather than an individual, American Wind contends that the FAA exception is inapplicable. *Id.*

R&C counters that the facts of *New Prime* indicate that an agreement between two corporate entities can still fit within the Supreme Court's broad definition of "contracts of employment." Pl.'s Resp. in Opp'n at p. 6. Because it is a small company with a small fleet of trucks, R&C argues that it was practically unable to enter into multiple independent contractor agreements with other brokers, similar to Oliveira's constrained business relationship with New Prime. *See* Compl. at p. 3, ¶ 11. In sum, R&C contends that it should be treated the same as the individual independent contractors in *New Prime* and that the arbitration clause in the Agreement should be deemed unenforceable.

### B) *R&C is not the kind of plaintiff the exclusion in Section 1 of the FAA was designed to protect.*

There are significant differences between the nature and relationship of the parties in this matter and the nature and relationship of the parties in *New Prime*. The Supreme Court's inclusion of the independent contractor agreement at issue in *New Prime* within the definition of contracts of employment does not stand for the proposition that *all* independent contractor agreements fall within the exclusion of Section 1 the FAA. Rather, the Supreme Court's analysis examined the language of Section 1 as a whole and pointed out that the operable language concerned "contracts

of employment of…any…class *of workers* engaged in foreign or interstate commerce." *New Prime*, 139 S.Ct. at 541 (emphasis in original). It explained:

> Congress didn't use the word "employees" or "servants," the natural choices if the term "contracts of employment" addressed them alone. Instead, Congress spoke of "workers," a term that everyone agrees easily embraces independent contractors. That word choice may not mean everything, but it does supply further evidence still that Congress used the term "contracts of employment" in a broad sense to capture any contracts for the performance of any *work* by *workers*.

*New Prime*, 139 S.Ct. at 541 (emphasis added). This language made clear that the Supreme Court viewed the limitations in Section 1 as focused on claims relating to "workers." In other words, while the Supreme Court in *New Prime* addressed whether an independent contractor agreement could be deemed a "contract of employment," there is no question that the exclusion applied only to employment-related contracts.

The question here, then, is whether the Agreement in this case can be construed as one governing employment or, "work by workers," as in *New Prime*. The comparison of the facts in this case and *New Prime* reveal that they differ significantly vis-à-vis the application of the plain language of Section 1 and the Supreme Court's clarification of the same. There is no question that the independent contractor agreement in *New Prime* governed "work by workers" <u>and</u> that the action in that case revolved around "work by workers"—as it concerned the payment of wages. Here, the situation is different. The Agreement in this case was between two businesses. It was an agreement by a vendor and a trucking company for the transport of the vendor's goods. Further, in no way can R&C claim that it—a small business—was an "employee" of American Wind. Rather, the Agreement made no specific designation as to which particular driver associated with R&C would actually perform the work under the Agreement. That was a determination for R&C. The Agreement specifically contemplated that the work could be performed by third parties hired and selected by R&C. *See* Agreement §§3.08 (Driver and Safety Compliance); 3.09 Employment

11

of Qualified Persons; 5.04(d) (Indemnity/Relationship with Workers). The Agreement here is a commercial contract between two business entities. It cannot reasonably be construed as a contract of employment governing "work by workers."

The Court also used the statutory construction canon of *ejusdem generis* to interpret the scope of Section 1 of the FAA. The Supreme Court used this canon in analyzing Section 1 in *Circuit City Stores, Inc. v. Adams*. 532 U.S. 105, 114-19 (2001). There, the issue before the Supreme Court was whether the exclusion in Section 1 exempted all employment contracts or only the employment contracts of transportation workers. The Court concluded the latter. In doing so, it applied the *ejusdem generis* canon. Under this canon, "general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words." *Id.* at 114 (citing 2A N. Singer, SUTHERLAND ON STATUTES AND STATUTORY CONSTRUCTION § 47.17 (1991)). In *Circuit City*, the Supreme Court interpreted the residual clause of Section 1 ("any other class of workers engaged in…commerce.") to be modified by the terms 'seamen' and 'railroad employees,' finding that the clause was "controlled and defined by reference to the enumerated categories of workers which are recited just before it." *Id.* Both seamen and railroad employees are transportation workers. As such, the Supreme Court explained that the exclusion could not reasonably be read to apply to *all* contracts of employment, but only to those of transportation workers.

The canon of *ejusdem generis* confirms the Court's determination that a commercial contract between two business entities does not fall under the exclusion of Section 1 of the FAA. First, the exclusion specifically exempts "contracts of employment." It then provides two specific examples of the type of contracts excluded; those of "seamen" and "railroad employees." These terms clearly designate natural persons. Consistent with the specifically identified examples,

"seamen" and "railroad workers," the general term "any other class of workers" cannot reasonably be read to apply to artificial business entities. When the terms are read as a whole, it is the Court's holding that the exclusion in Section 1 of the FAA cannot be construed to encompass the commercial contracts of artificial business entities like those involved in this case.

Neither the plain language of the FAA nor the Supreme Court's interpretation in *New Prime* supports the extension of Section 1 of the FAA to commercial disputes brought by artificial business entities. Because there is no applicable exclusion, the general policy of the FAA, strongly favoring the arbitration of disputes, is controlling here. As such, the Court holds that the parties' contractual arbitration clause is enforceable and requires the arbitration of their dispute.[1]

## II. THE COURT STAYS, RATHER THAN DISMISSES, THE ACTION.

Should the Court compel this matter to arbitration, as it has done, R&C has asked to stay proceedings rather than dismiss. Pl.'s Resp. in Opp'n at p. 13. Section 3 of the FAA provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the application for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3.

---

[1] American Wind argues in the alternative that if the contract is not arbitrable under federal law, it is nonetheless arbitrable under Pennsylvania law. Def.'s Reply Br. at p. 6. R&C responds that because arbitration is precluded under federal law, it is unnecessary for the Court to analyze whether the agreement is arbitrable under Pennsylvania law. Pl.'s Resp. in Opp'n at p. 17. The Court need not reach a determination on this issue as it has found the arbitration provision enforceable under federal law.

American Wind argues that despite the statute's express provision instructing district courts to stay a case pending arbitration, the Court should nevertheless follow a growing trend among federal courts to dismiss a case without prejudice when the entire dispute will be decided in arbitration. American Wind cites to *Wallace v. GrubHub Holdings, Inc.*, No. 18 C 4538, 2019 WL 1399986, at 6 (N.D. Ill. Mar. 28, 2019), which described a "judicially-created exception to the general rule which indicates district courts may, in their discretion, dismiss an action rather than stay it where it is clear the entire controversy between the parties will be resolved by arbitration." The *Wallace* court cited to decisions of various courts finding that it is not an abuse of discretion for the district court to dismiss, rather than stay, a case subject to proceedings *Id.* (citing *Johnson v. Orkin, LLC,* 928 F.Supp.2d 989, 1008–009 (N.D. Ill. 2013)).[2] Notably absent from the list of courts echoing this principle is the Third Circuit.

Steadfastly adhering to the plain language of the FAA, the Third Circuit "side[s] with those courts that take the Congressional text at face value" and unequivocally maintain that district courts are obligated to "grant the stay once it decided to order arbitration." *Lloyd v. HOVENSA,*

---

[2] *See Soto–Fonalledas v. Ritz–Carlton San Juan Hotel Spa & Casino,* 640 F.3d 471, 473 (1st Cir. 2011) (affirming the district court's granting of a motion to compel arbitration and dismissing on the grounds that the dispute was covered by an arbitration agreement); *Baumann v. Finish Line, Inc.,* 421 Fed. Appx. 632, 636 (7th Cir. 2011) (affirming the district court's dismissal of a suit when the court found that all the claims are arbitrable); *Green v. SuperShuttle Int'l, Inc.,* 653 F.3d 766, 770–71 (8th Cir. 2011) (acknowledging the judicially-created exception to the general rule, but finding that not all contested issues could be resolved in arbitration and reversing the district court); *Ozormoor v. T–Mobile USA, Inc.,* 354 Fed. Appx. 972, 975 (6th Cir. 2009) (disposing a party's challenge to the dismissal of a suit on the basis that the district court must stay rather than dismiss the action); *Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.,* 252 F.3d 707, 709–10 (4th Cir. 2001) (acknowledging that "dismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable"); *Fedmet Corp. v. M/V BUYALYK,* 194 F.3d 674, 678 (5th Cir. 1999) (finding that if all issues raised before the district court are arbitrable, dismissal of the case is not inappropriate); *Sparling v. Hoffman Const. Co., Inc.,* 864 F.2d 635, 638 (9th Cir. 1988) (finding that the district court "acted within its discretion when it dismissed [the plaintiff's] claims" because the broad arbitration clause encompassed "all of the plaintiff's claims").

*LLC,* 369 F.3d 263, 269 (3rd Cir. 2004). The Court of Appeals held that the statute simply "cannot be read to say that the Court shall enter a stay in all cases except those in which all claims are arbitrable and the Court finds dismissal to be a preferable approach." *Id.*

The Court cannot disregard binding precedent and it will not ignore the plain language of Section 3 of the FAA. The Third Circuit follows the plain meaning of the text and this Court will too. The Court, therefore, stays, rather than dismisses, the action pending arbitration.

## CONCLUSION

AND NOW, this 20th day of March 2020, the Court hereby **DENIES** Defendant's motion to dismiss (ECF No. 13). The Court hereby **GRANTS** Defendant's motion to compel arbitration and **STAYS** the case.

BY THE COURT:

/s/ William S. Stickman IV

WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE